# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:24-cr-00051-006 |
| Plaintiff, | : | |
| | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| NORMAN DALE BEACH, | : | |
| Defendant. | : | |
| | : | |

## DECISION & ORDER DENYING DEFENDANT NORMAN BEACH'S MOTION TO RECONSIDER BOND STRUCTURE (DOC. NO. 185)

This case is before the Court on Defendant Norman Beach's Motion to Reconsider Bond Structure ("Motion," Doc. No. 185), which was referred to the undersigned Magistrate Judge for a hearing and decision. (Order, Doc. No. 186.) The Motion seeks to reopen the detention hearing and requests that Defendant be released from detention. The Court held a hearing on the Motion and heard testimony from Defendant and argument from both counsel. For the reasons set forth below, Defendant's Motion is DENIED.

**I.     BACKGROUND**

    **A.     <u>Detention Hearing And Order</u>**

On June 20, 2024, the undersigned issued an order granting the Government's motion for pretrial detention under the standards set forth in the Bail Reform Act, 18 U.S.C. § 3142. (Detention Order, Doc. No. 115.) Following a hearing, the Court found that the Government had met its burden of proving by clear and convincing evidence that

1

no condition or combination of conditions will reasonably assure the safety of other persons and the community if Defendant is released prior to trial. (*Id*. at PageID 309.)

To explain why it had reached this conclusion, the Court summarized certain allegations in the Indictment:

> Defendant is a member of the Thug Riders Motorcycle Club ("TRMC"), which is an all-male outlaw motorcycle gang whose members allegedly commit extortion, identity fraud, assault, arson, murder, and other acts of violence. . . .
>
> TRMC is a highly organized and hierarchical gang. . . . Defendant allegedly served as the Vice-President of the Dayton Chapter. In this position of leadership, Defendant had the authority to direct TRMC members to engage in unlawful and violent acts to further the goals and purposes of TRMC.
>
> TRMC members . . . must also use any means necessary to obtain respect from others, including by committing acts of intimidation, threatening violence, and using violence. TRMC members maintain and enhance their status in the organization by their use and threatened use of violence. . . .
>
> From approximately January 1, 2019 to the present, Defendant allegedly conspired with other TRMC members to commit racketeering activity that included multiple acts of murder, arson, extortion, and identity theft, for the purposes of conducting and participating in the affairs of TRMC.
>
> On or about April 9, 2023, Defendant allegedly traveled with other TRMC members in a convoy of vehicles to Lexington, Kentucky. The purpose of the trip was to attack and retaliate against the Outlaws MC, as it was believed that Outlaw MC members had attacked two Kentucky TRMC members. The eight-vehicle convoy rendezvoused at a gas station and then drove to the Outlaws MC clubhouse where TRMC members opened fire, discharging nearly 200 live gunfire rounds into the occupied building.
>
> \*\*\*\*
>
> Between April 25, 2020 and December 30, 2023, Defendant and other TRMC members caused the TRMC's support motorcycle clubs to pay monthly dues or "protection payments" in cash to the leadership of the TRMC Dayton Chapter.

(Detention Order, Doc. No. 115, PageID 310-11.)

Based upon these allegations, the Court concluded that "[g]iven the extreme violence described in the Indictment and the coordinated nature of the alleged attacks . . . the nature and circumstances of the instant offenses weigh heavily in favor of detaining Defendant prior to trial." (*Id*. at PageID 311.) The Court further explained why the nature of the alleged crimes showed that no condition or combination of conditions could reasonably assure the safety of the community if Defendant were released prior to trial:

> [T]he highly organized and extreme violence described in the Indictment and at the hearing provides very strong evidence of Defendant's dangerousness to others. The alleged crimes suggest a blatant disregard for the rule of law and the safety of other members of the community. TRMC allegedly uses violence as a means of doing business and maintaining its organization. For both reasons, the Court would have no assurance that Defendant would obey an order prohibiting him from possessing firearms, using violence, or directing other TRMC members to use violence.
>
> ****
>
> Defendant poses a high risk of very serious danger to the community because he has allegedly been willing to engage in extreme violence, including lethal violence, as part of his membership in TRMC. He also has allegedly directed the use of violence as a member of TRMC's leadership. The Court agrees with the Government's argument that organized group violence can be particularly dangerous to members of the general public.

(Detention Order, Doc. No. 115, PageID 312-13.)

## B.     Defendant's Motion to Reopen The Detention Hearing

On September 16, 2024, Defendant filed a Motion in which he requested to be released from pretrial detention and placed on home incarceration with electronic monitoring. (Motion, Doc. 185, PageID 545.) Defendant asserted that he had seriously injured his right hand and needs an operation that he cannot receive while detained in the

Butler County Jail. (*Id.*) Defendant also stated that three of his co-Defendants had not been detained and asserted that "he would like to be treated in a similar way." (*Id.*)

The undersigned subsequently held a hearing on the Motion and heard testimony from Defendant and argument from counsel. Defendant testified that approximately two years ago, he saw a hand specialist and underwent an operation on his right hand to treat gout and carpal tunnel syndrome. He subsequently broke his right hand while punching a bag; the fracture was treated with a cast and therapy but no operation. Three months later, Defendant broke his right hand again when he punched an individual who was stealing from him; again, it was treated with a cast and therapy. Defendant's hand specialist told him at the time that if he broke his hand again, he probably should undergo an operation.

On July 9, 2024, while Defendant was detained at the Butler County Jail, he punched the wall in his sleep and injured his right hand. Defendant testified that he feels like his hand is broken and that a bone is sticking out. He said that his hand goes numb and he is in pain. Defendant's hand was checked by a doctor and x-rayed, and he was told that it was not broken. No medical practitioner has recommended that Defendant receive an operation because of this latest injury. Defendant has not requested further treatment.

**II.      LEGAL STANDARD**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *U.S. v. Salerno*, 481 U.S. 739, 755 (1987). Under the Bail Reform Act, the Court "**shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond … unless the judicial officer determines that such release will not reasonably assure the appearance of the

4

person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added).

If a magistrate judge issues an order detaining a defendant prior to trial, the Bail Reform Act allows the defendant to petition a district judge for revocation or amendment of the detention order. 18 U.S.C. § 3145(b). Alternatively, the defendant may seek to reopen the detention hearing before the magistrate judge if certain conditions are met:

> The hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists *that was not known* to the movant at the time of the hearing *and that has a material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added).

To satisfy the first requirement of a motion to reopen the detention hearing, the defendant must show that new information exists that was not previously known and could not have been presented at the detention hearing. *U.S. v. Bothra*, No. 19-1953, 2019 U.S. App. LEXIS 39335, *2 (6th Cir. Nov. 5, 2019). "This requires a showing of truly changed circumstances or a significant event." (*Id*.) This requirement will not be met if the new information was not known but could have been known at the time of the original hearing. *Id*. at *3 ("[R]esidential monitoring is not a new practice. Because Bothra could have presented this option previously, it is not new information now.").

To satisfy the second requirement of a motion to reopen the detention hearing, the defendant must show that the new information is "of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less

5

likely to pose a danger to the community." *U.S. v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012); *accord U.S. v. Sandals*, 9 F. App'x 377, 379 (6th Cir. 2001) ("[T]o justify reopening the detention hearing, the information had to be sufficiently material to the issue of dangerousness."); *Bothra*, 2019 U.S. App. LEXIS 39335, *4 ("Whether Bothra can assist in his defense does not have any impact on the determination of whether conditions of release would assure his appearance or protect the public.").

### III.  ANALYSIS

In his Motion, Defendant primarily argues that the Court should reopen the detention hearing and release him from detention because he seriously injured his hand on July 9, 2024, and requires medical treatment that he cannot receive while detained.[1] During the hearing, Defendant conceded that he was examined by a doctor and was told that his hand is not broken. He also has not sought any further medical treatment.

Because Defendant injured his hand after the Court issued its detention order, the Court finds that Defendant did not know about this issue when the detention hearing was held. Therefore, Defendant has met the first requirement for reopening that hearing.

Defendant has not, however, met the second requirement for reopening the detention hearing. As an initial matter, Defendant's argument that he must be released from detention to obtain medical attention was not supported by any evidence, such as

---

[1] Defendant also requests that he "be treated in a similar way" to three co-Defendants who were released on conditions prior to trial. (Doc. No. 185.) The Court applies the standards set forth in the Bail Reform Act to every defendant based upon individualized factors that include the crimes for which they are being prosecuted, the factual allegations underlying the criminal charges, and their criminal history. The unremarkable fact that the Court detains some defendants, and releases other defendants, who are charged with the same or similar crimes is not a basis for arguing that a particular defendant should have been released. Defendant's request is therefore denied.

medical records or a medical opinion that Defendant needs to have an operation on his hand. In fact, Defendant's argument was contradicted by his own testimony that an x-ray of his hand showed it was not broken, he was told that it was not broken, and he has not sought any further treatment for his hand. Thus, Defendant did not provide an adequate factual basis for his argument that he requires medical treatment that he cannot obtain while detained.

But even assuming that Defendant had provided such evidence, a motion to reopen a detention hearing is not a proper avenue for remedying inadequate medical treatment. "[T]he court cannot release a clearly dangerous person simply because he alleges (or even may be able to prove) that he is not receiving adequate medical care in jail." *U.S. v. Ducksworth*, No. 23-cr-8, 2023 U.S. Dist. LEXIS 121243, *3 (E.D. Wis. July 14, 2023). If Defendant wishes to challenge the adequacy of his medical treatment, he must do so through other means. *Id*.

To reopen the detention hearing, which is a separate issue, Defendant must show that his medical condition has a material bearing on the issues of whether he is a flight risk or danger to the community. *E.g., U.S. v. Castillo*, No. 91-1660, 1991 U.S. App. LEXIS 27668, * (1st Cir. Sept. 11, 1991) (although defendant had kidney stones and low back pain, "[t]here is no reason to believe that his health precludes the risk of flight"); *U.S. v. Walz*, No. 23-cr-159, 2023 U.S. Dist. LEXIS 123172, *9-10 (D. Minn. July 18, 2023) ("Defendant's medical condition says little about his ability to abide by conditions of release and does not have a material bearing on the prior finding that there is no condition or combination of conditions that would assure that Defendant would not pose

a danger to the safety of any other person or the community."); *U.S. v. Pepin-Amarante*, No. 22-cr-242, 2023 U.S. Dist. LEXIS 23028, *20 (D.P.R. Feb. 9, 2023) ("[T]he Court is not convinced that Defendant's current condition makes him any less of a flight risk or danger to community, especially because Defendant already had Leukemia when he allegedly committed the charged offenses"); *U.S. v. Crowe*, No. 1:20-cr-30, 2021 U.S. Dist. LEXIS 123210, *8 (W.D. Ky. June 30, 2021) ("Crowe's medical issues do not detract from the undersigned's prior finding that he posed a flight risk").

Here, Defendant's injury to his right hand does not undermine the Court's prior conclusions that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released while awaiting trial. As noted above, Defendant was indicted for ordering and participating in a series of violent and unlawful actions, including murder, arson, extortion, and identity theft. Some of the alleged crimes apparently took place while Defendant's right hand was being treated for gout, carpal tunnel syndrome, and two separate fractures. The fact that Defendant has re-injured his right hand does not have a material bearing on whether his release from detention would pose a danger to the community.

Accordingly, Defendant's Motion to Reconsider Bond Structure (Doc. No. 185) is **DENIED**.

**IT IS SO ORDERED.**

       */s/ Caroline H. Gentry*
       Caroline H. Gentry
       United States Magistrate Judge

Any party may file and serve on the opposing party a motion for revocation or amendment of this Order with a United States District Judge. 18 U.S.C. § 3145(b). A defendant who files a motion for revocation or amendment must arrange for a transcript of the detention hearing. This Order is in full force and effect, notwithstanding the filing of a motion for revocation or amendment, unless it is stayed by the Magistrate Judge or District Judge.